Application of Lawrence E. FENN.

Patent Appeal No. 6963.

United States Court of Customs and Patent Appeals.

April 25, 1963.

Ernest M. Junkins, Bridgeport, Conn., for appellant.

Clarence W. Moore, Washington, D.C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claim 17 of appellant's application entitled "Electric Heating Element."[1]   Six claims were allowed.

Claim 17 reads:

"17.   In a 12-volt cigar lighter of the type having an igniting unit removable from a holder for use, a heating element comprising a flat tightly wound spiral coil formed of solely one continuous length of thin flat resistance wire with the flat faces of the wire in substantially face-to-face engagement thereby forming a compact igniting heat-retaining mass, said wire consisting of a metal alloy including iron and aluminum having the property upon being heated of producing oxide on its surfaces, the convolutions of the coil being adhered together to prevent relative shifting thereof and axial deformation of the coil by oxide coating formed *in situ* on the flat surfaces of the wire upon being heated after the coil is wound and before being energized by said 12-volt current, said oxide electrically insulating the convolutions of the coil from each other sufficiently to prevent shorting-out of adjacent convolutions when the coil is energized by said 12-volt current."

The sole reference is:

Schnick 2,975,262 March 14, 1961.

The application discloses an electric cigar lighter for use in automobiles having 12-volt electrical systems.   The lighter employs a flat spiral coil tightly wound from flat wire of a metal alloy including iron and aluminum and having the property of producing oxide on its surfaces upon being heated.   The wire is in the form of a ribbon of rectangular cross-section wound about an axis parallel to the longer dimension of the rectangle.   After the wire is wound into a coil, it is heated to produce the oxide on its surface.   The oxide adheres the tightly wound convolutions of the coil together to prevent relative shifting of adjacent convolutions and resulting axial deformation and also serves as insulation between the convolutions.

1.   Serial No. 367,233, filed July 10, 1953.

The Schnick patent also discloses an electric cigar lighter for automobiles. That lighter includes an igniting unit comprising a metallic wire wound tightly into a spiral coil without any substantial clearance between the convolutions of the spiral. The wire is of a material which forms an insulating oxide upon being heated, which oxide prevents short circuits between adjacent turns. The wire is in the form of a narrow strip formed transversely of its length so as to be substantially concave on the inner face relative to the axis of the spiral and convex on the outer face. Specific examples of the wire disclosed are of V-shaped or U-shaped cross-section with the convolutions of the spiral coil nested one within the other.

The present application was previously involved in an interference with the application which resulted in the Schnick patent on a count corresponding to claim 3 of that patent and similar to the appealed claim. That count is reproduced below with the words that do not appear in the appealed claim italicized [2] and with additional words appearing in the appealed claim inserted in brackets.

"In a 12-volt cigar lighter of the type having an igniting unit removable from a holder for use, a heating element comprising a flat, tightly wound, spiral coil formed of solely one continuous length of thin [flat] resistance wire with the *sides* [flat faces] of the wire in substantially face-to-face engagement thereby forming a compact igniting heat-retaining mass, said wire consisting of a metal alloy including iron and aluminum having the property upon being heated of producing oxide on its surfaces, the convolutions of the coil being adhered together to prevent relative shifting thereof and axial deformation of the coil by oxide coatings formed in situ on the *side* [flat] surfaces of the wire upon being heated after the coil is wound and before being energized by said 12-volt current, said oxide electrically insulating the convolutions of the coil from each other sufficiently to prevent shorting-out of the adjacent convolutions when the coil is energized by said 12-volt current."

In the interference, appellant filed an abandonment of the contest as provided for by Rule 262 of the Rules of Practice of the Patent Office [3] and the interference was terminated by dissolution in accordance with that rule.

The Schnick patent subsequently issued with the corresponding claim, now claim 3 of the patent.

The board affirmed the rejection of the appealed claim as unpatentable over the interference count and as unpatentable over the disclosure of the Schnick patent.

Under the provisions of Rule 262,[4] appellant stands in the same position as he would had there been an award of priority adverse to him with respect to the interference count. Smith v. Watson, 95 U.S.App.D.C. 52, 218 F.2d 863, points out that an adverse award of priority bars an applicant from obtaining a claim not patentably distinct from

---

2. The term "in situ" appears italicized in the appealed claim but not in the count.

3. "262. Disclaimer, concession, abandonment

\*    \*    \*    \*    \*

"(b) An applicant, except an applicant for reissue having a claim or claims from his patent in the interference, may at any time prior to the taking of testimony, and at any time thereafter with the consent of all of the other parties involved, avoid the continuance of the interference as to all counts by filing a written *abandonment of the contest* or of the application, signed by the inventor in person with the written consent of the assignee when there has been an assignment. *Upon the filing of such abandonment of the contest* or of the application, *the interference shall be dissolved as to that party, but such dissolution shall in subsequent proceedings have the same effect with respect to the party filing the same as an adverse award of priority.* \* \* \*" (Italics supplied)

4. See paragraph (b) of Rule 262 in footnote 3.

the subject matter awarded his adversary. Similarly, this court follows the rule that applicants who concede priority or disclaim interference counts are not entitled to claims which do not define patentably over those counts. In re Sola, 77 F.2d 627, 22 CCPA 1313; and In re Williams, 62 F.2d 86, 20 CCPA 738.

■ The rejection on the interference count thus raises the issue whether the appealed claim distinguishes patentably over the count. As is apparent from the modified reproduction of the count set out above, the claim differs from it only in (1) the additional limitation that the resistance wire is flat; (2) in stating that "flat faces" of the wire, instead of "sides," are in substantially face-to-face engagement; and (3) in stating that it is on "flat" surfaces, instead of "side" surfaces, of the wire that the oxide coating is formed.

The count specifies that the spiral coil is of "thin * * * resistance wire" with the sides of the wire "in substantially face-to-face engagement" and with "the convolutions of the coil being adhered together to prevent relative shifting thereof and axial engagement of the coil by oxide coatings." It thus specifically covers and clearly suggests a structure where the oxide coating forms the only means for preventing axial deformation of the core. We agree with the board that a person having ordinary skill in this art would find a thin wire or ribbon of rectangular cross-section to be an obvious type of wire which can be formed into a spiral core with its sides in face-to-face engagement. Such a wire clearly meets the term "flat" as used in the count as well as the recitations including the terms "flat faces" and "flat surfaces." Hence, the appealed claim is not patentably distinct from the interference count, which, to repeat, appellant previously abandoned. Under such circumstances, it is unnecessary to consider the board's rejection on the Schnick disclosure.

The decision is affirmed.

Affirmed.