**SURFCO HAWAII, Plaintiff–Appellant,**

v.

**FIN CONTROL SYSTEMS PTY, LIMITED, Defendant–Appellee.**

**No. 00–1356.**

United States Court of Appeals, Federal Circuit.

Decided: Sept. 5, 2001.

Rehearing and Rehearing En Banc Denied: Oct. 12, 2001.

Robert A. Vanderhye, Nixon & Vanderhye P.C., of Arlington, VA, argued for plaintiff-appellant.

Martin J. Trupiano, Squire, Sanders & Dempsey, L.L.P., of Los Angeles, CA, argued for defendant-appellee.

Before MAYER, Chief Judge, NEWMAN and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Surfco Hawaii appeals the judgment of the United States District Court for the District of Hawaii holding Surfco liable for infringement of Fin Control Systems' United States Patents No. 5,328,397 (issued Jul. 12, 1994), No. 5,464,359 (issued Nov. 7, 1995), and No. 5,672,081 (issued Sep. 30, 1997).[1] We conclude that Surfco's activities are a permissible modification of the patented surf craft, and reverse the judgment of infringement.

1. *Surfco Hawaii v. Fin Control Systems, Ltd.,* No. 98–00598SPK, 1999 WL 959436 (D.Haw. Jan. 11, 1999).

## BACKGROUND

The patents in suit are directed to surf craft having releasable fins, and particularly to the structure and mechanism whereby the fin is releasably engaged within the body of the surf craft. Claim 1 of the '397 patent is representative:

1. A surf craft including a body with a fixing element embedded therein, the fixing element being of material of greater strength than that of the surf craft body and having a fixing aperture therein, said body having a region near said fixing element, a fin attached to the surf craft with an end surface of the fin abutting against the surface of the body in the region of the fixing element, the fin having a coplanar integrally formed fixing formation extending from said end surface and engaged within the aperture of the fixing element, the fixing element including releasable engagement means for locking the fixing formation within said aperture, said releasable engagement means releasably engaging said fixing formation at a location inside said aperture.

As illustrated in Figures 1 and 3 of the patents, a fin 11 is attached to the surf craft body 10 via tabs 18 that are inserted into fixing elements 12 in the body of the surfboard and secured by grub screws.

FIG. 1

FIG. 3

Surfco manufactures fins that are specifically fitted for use with the Fin Control Systems surfboard. The Surfco fins differ from the Fin Control fins only in that the Surfco fins incorporate rubber edges as a safety feature; the Surfco fins have the brand name "Pro Teck." The Surfco fins have tabs which fit the fixing elements of the Fin Control surfboards, and are designed to be secured by the Fin Control grub screws.

In this declaratory action, Surfco moved for summary judgment of noninfringement on the ground that the replacement of the unpatented fins of the Fin Control surf craft was akin to the permissible "repair" of a patented device after it had been placed in commerce by the patentee. Fin Control moved for summary judgment on the ground that the sale and use of replacement fins for the patented surf craft is not permissible "repair" because "the replaced FCS fins were in good working condition and did not need to be replaced." The district court granted Fin Control's motion, ruling that the repair doctrine did not permit the accused activity, and held Surfco liable for contributory infringement and inducing infringement of the Fin Control patents. This appeal followed.

## DISCUSSION

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c), or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We give plenary review to the district court's grant of summary judgment. *EMI Group N. Am., Inc. v. Intel Corp.,* 157 F.3d 887, 891, 48 USPQ2d 1181, 1184 (Fed.Cir.1998).

In ruling that replacement of unworn Fin Control fins with the Surfco fins produced an infringing surf craft, the district court stated:

> Of significance in this case is how the accused device is used. There is no question that surfboard owners are legally entitled to buy Pro Teck fins to replace worn or broken Fin Control fins. However, Surfco's marketing materials emphasize another purpose for buying Pro Teck fins: safety. Unlike Fin Control fins, Pro Teck fins have rubber edges to prevent the fins from cutting the user of the surfboard. This feature of Pro Teck fins creates an incentive for surfboard owners to replace unworn Fin Control fins with the accused device.

In essence, the district court held that the replacement of unworn fins with other fins created a new and infringing device. Surfco argues that the court's application of the law of "repair and reconstruction" is incorrect, and that the replacement of unpatented parts of a patented device is permitted, whether or not the parts are worn or broken.

■ As discussed in *Jazz Photo Corp. v. Int'l Trade Comm'n,* 264 F.3d 1094 (Fed.Cir.2001), the terms "repair" and "reconstruction" are used to define the boundary between permitted and prohibited activities with respect to patented items after they have been placed in commerce. Originating in the principle of exhaustion of the patent right after first sale, the general rule is that "while the ownership of a patented article does not include the right to create a substantially new article, it does include the right to preserve the useful life of the original article." *Id.* 264 F.3d at 1102. Precedent has elaborated on the right of the owner to replace unpatented components, provided that the activity is not such as to make a new article. In *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) the Court stated the controlling inquiry governing the replacement of unpatented parts of a patented article:

> reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to "in fact make a new article," after the entity, viewed as a whole, has become spent.... Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property.

*Id.* at 346, 81 S.Ct. 599 (citations omitted).

■ As illustrated in *Aro Manufacturing,* and as acknowledged by the district court, the concept of permissible "repair" is directed primarily to the replacement of broken or worn parts. However, permissible "repair" also includes replacement of parts that are neither broken nor worn. When a device or substantial parts thereof are not reconstructed, or a condition of sale is not violated, the law does not prevent the purchaser of a patented device from prematurely replacing an unpatented part.

*See Kendall Co. v. Progressive Medical Technology, Inc.,* 85 F.3d 1570, 38 USPQ2d 1917 (Fed.Cir.1996) (replacement of the unpatented sleeves of a patented medical device, before the sleeves were spent, was of the nature of repair, not reconstruction). "Premature repair is the business of the purchaser of the product, who owns it, rather than the patentee, who sold it." *Id.* at 1575, 85 F.3d 1570, 38 USPQ2d at 1921.

■ Precedent amply supports the right of a purchaser of a patented device to do more than simply replace spent or broken parts. *See, e.g., Wilbur Ellis Co. v. Kuther,* 377 U.S. 422, 425, 84 S.Ct. 1561, 12 L.Ed.2d 419, 141 USPQ 703, 704–05 (1964) ("Petitioners in adapting the old machines to a related use were doing more than repair in the customary sense; but what they did was kin to repair for it bore on the useful capacity of the old combination, on which the royalty had been paid."); *Hewlett–Packard Co. v. Repeat–O–Type Stencil Mfg. Corp.,* 123 F.3d 1445, 1452, 43 USPQ2d 1650, 1657 (Fed.Cir.1997) ("ROT's modification of the original HP cartridges improved their usefulness by allowing ROT and its customers to use them for their own purposes. It was 'kin to repair.' ").

■ Fin Control argues that while precedent permits the owner of a patented device to modify its component parts to extend the useful life of the device, it does not permit the owner to change entirely an important part of the device, even for reasons of safety. However, the right to replace or modify a part of a patented device does not require that the part be spent or broken. Infringement liability depends on the extent of the change, not its purpose. *See Mitchell v. Hawley,* 83 U.S. (16 Wall.) 544, 548, 21 L.Ed. 322 (1872) (when the sale of a patented article "is absolute, and without any conditions, the rule is well settled that the purchaser may continue to use the implement or machine purchased until it is worn out, or he may repair it or improve upon it as he pleases, in [the] same manner as if dealing with property of any other kind."). The right of "repair" follows from the exhaustion of a patentee's right to control the disposition of a patented article after it has been sold. The owner may use, repair, and modify the device as long as there is not "reconstruction of the entity as to 'in fact make a new article.' " *Aro Manufacturing,* 365 U.S. at 346, 81 S.Ct. 599. Although extension of the useful life of an article is the usual reason for modification or replacement of component parts, it is not the only reason allowed by law. Thus the purchaser of a Fin Control surfboard may choose to replace the fins, although the original unpatented fins are not broken or spent, without incurring liability for patent infringement. The patented surf craft is not "recreated" by the substitution of a different set of fins, even when the new fins are specifically adapted for use in the patented combination. As a matter of law, on the undisputed facts, the patent is not infringed by the modified surf craft having the Surfco fins. Thus Surfco's sale of replacement fins does not constitute inducement of infringement or contributory infringement.

### Conclusion

The summary judgment in favor of Fin Control is reversed, and the injunction vacated. Summary judgment in favor of Surfco is granted, as a matter of law.

Surfco's appeal of the district court's claim construction is mooted, and has not been considered.

No costs.

*REVERSED.*